Filed 12/22/21  P. v. Carrasco CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078123 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD208418) |
| CARLOS HUMBERTO CARRASCO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene Sevidal and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

In 2008, a jury convicted Carlos Humberto Carrasco of two counts of second degree murder (Pen. Code,[1] § 187, subd. (a)) and one count of shooting into an inhabited dwelling (§ 246). The jury found the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)) and that a principal used a firearm causing the death of a person (§ 12022.53, subds. (d) and (e)). The court sentenced Carrasco to an indeterminate term of 80 years to life in prison.

Carrasco appealed and this court affirmed the judgment in an unpublished opinion, *People v. Carrasco*, D054174 (July 13, 2010).

In 2020, Carrasco filed a petition for resentencing under section 1170.95. The court appointed counsel, received briefing, reviewed the record of conviction, and then denied the petition. Based on the prior opinion of this court, the trial court denied the petition, finding the record demonstrated Carrasco acted with actual or implied malice. Carrasco filed a timely notice of appeal.

Carrasco contends, the court erred in concluding he was ineligible for resentencing without first issuing an order to show cause (OSC) and conducting an evidentiary hearing. He argues, the trial court should not have relied on this court's prior opinion to determine he acted with express or implied malice in the commission of the offenses in this case. We will find the court properly considered the record of conviction including this court's prior opinion. We believe that under the facts of the case, the prior opinion correctly concluded Carrasco was either the actual killer or was a direct aider and abettor who acted with implied malice. We will affirm the trial court's denial of Carrasco's petition.

---

[1] All further statutory references are to the Penal Code.

STATEMENT OF FACTS

The following summary is from the relevant portion of the facts from our prior opinion, *People v. Carrasco*, *supra*, D054174.

"1. The People's Evidence

"a.    *The June 22, 2007 Shootings*

"On June 22, 2007, [K.L.] was in a car in an alley. [K.L.] saw four men in the alley, one of whom was yelling at a fifth man. According to [K.L.] , one of the men from the group of four struck the fifth man in the head with a bottle. [K.L.] ducked down in the car. Shortly thereafter, she heard two gunshots.

"A second witness, [I.S.], identified Carrasco in court as having been present in the alley during the June 22 shootings. [I.S.] also testified that she had previously identified [Jose] Nogales from a series of photographs as having been present in the alley and having fled the scene with a black gun tucked in his waistband. Carrasco's DNA was discovered on a bottle found at the scene of the June 22 shootings. Cartridge cases that matched the gun used in the murders charged in counts 3 and 4 were found at the scene of the June 22 shootings.

"b.    *The July 8, 2007 Murders*

"Just after midnight on July 8, 2007, several members of the Perez family and their friends were standing outside the Perez home, talking. A white pickup truck passed slowly by the Perez residence, made a U-turn at a cross street, and slowly approached the Perez residence again. Inside the pickup truck were the driver and at least one passenger. As the truck approached the Perez residence, it began driving even more slowly. The driver's side of the truck was closest to the Perez residence. The driver of the truck shouted through his open window, 'Paradise Hills. Paradise Hills.

3

P.H.' The driver also asked, 'Where you from?' The driver appeared to be attempting to start a fight. [F.P.], who was standing close to the truck, angrily responded, 'Get out of here.' The passenger door of the truck then opened, and the passenger began shooting at the people standing outside the Perez home. Both [F.P.] and his brother, [J.P.], died from gunshot wounds to their heads.

"At approximately 3:30 a.m. that morning, police saw Carrasco at a gas station standing next to a white pickup truck. Police detained Carrasco and his girlfriend, [J.G.], who was in the truck. Several people who had been outside the Perez residence at the time of the shootings, including [R.P.], were taken to the gas station and asked whether they could identify Carrasco as one of the perpetrators of the Perez murders. [R.P.] told police, 'Sure looks like him. . . .' A second eyewitness, [B.A.], told police that Carrasco was a 'good candidate.'

"While police were detaining Carrasco at the gas station, they learned that Carrasco had just dropped off Nogales at Nogales's apartment. At approximately 6:00 a.m. that morning, police went to Nogales's apartment, arrested him, and found the firearm that was used in both the June 22 shootings and the July 8 murders.

"c.    *Gang Evidence*

"The Paradise Hills criminal street gang has approximately 48 members. Carrasco and Nogales are active members of the gang. The July 8 murders were committed in the territory of a gang called the 'Lomita Village 70s.' The Paradise Hills gang and the Lomita Village 70s gang have a long standing rivalry.

4

"2.  The Defense

"Carrasco presented the testimony of several eyewitnesses who had not identified him at the gas station on the night of the murders.  Carrasco also testified at trial.  Carrasco admitted that he had been driving his girlfriend's mother's white pickup truck on the night of the murders.  Carrasco also admitted that he was a member of the Paradise Hills gang, that he was close friends with Nogales, and that he had spent the evening of the murders with Nogales at a party.  Carrasco denied having driven the white pickup truck near the time of the murders.  Nogales presented no witnesses in his defense."

DISCUSSION

I

Legal Principles

Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437) was enacted to " 'amend[ ] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Section 1170.95, subdivision (c) provides:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor's response is served.  These deadlines shall be extended for good

5

cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

When a trial court reviews a petition for resentencing, the court first determines if the petitioner has shown a prima facie case for relief under the statute. If so, the court must issue an OSC and hold an evidentiary hearing on the petition. (*People v. Lewis* (2021) 11 Cal.5th 952, 962 (*Lewis*).) However, the court may deny the petition if the person is ineligible as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980-981.) The court may review the record of conviction, including any prior appellate opinion, to determine if the petitioner's allegations are rebutted by the record. (*Lewis*, at p. 972.) However, the court may not engage in factfinding and weighing credibility at the prima facie stage of petition review. (*Drayton*, at p. 979.)

The court in *Lewis* went on to explain the process of reviewing petitions for resentencing under section 1170.95. The court said: "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*)

6

" 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id*. at p. 972.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid*.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95], subdivision (c)." (*Ibid*.)

## II

## The Record of Conviction

Having established the trial court was correct in reviewing the record of conviction, we next turn to the content of the record. The case against Carrasco was prosecuted on the theory he was either the actual killer or a direct aider and abettor who acted with at least implied malice. The jury was not instructed on the natural and probable consequences doctrine. The jury was instructed on the second degree felony murder doctrine based on the death arising from shooting at an inhabited dwelling. On appeal, this court determined the second degree felony murder instruction was improper in light of *People v. Chun* (2009) 45 Cal.4th 1172, which was decided after the trial was completed. In light of the erroneous instruction, it was necessary for this court to determine whether the error was harmless beyond a reasonable doubt.

The court evaluated the evidence that established the fatal shooting was accomplished by shooting into an occupied dwelling. This court found

the instructional error harmless beyond a reasonable doubt. Having analyzed the evidence the court said: " 'In light of this evidence, no juror could have found that either of the appellants 'participated in this shooting, either as a shooter or as an aider and abettor, without also finding that [each] committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice.' " (*People v. Carrasco, supra*, D054174, quoting *People v. Chun, supra*, 45 Cal.4th at p. 1205.)

In the prior opinion, this court did not merely find substantial evidence of malice. It found beyond a reasonable doubt that the jurors, with their verdict, necessarily concluded that Carrasco acted with express or implied malice under a theory of malice, which is still valid after the enactment of Senate Bill 1437.

In light of this court's finding, and the absence of any instruction on natural and probable consequences, the trial court correctly concluded Carrasco was not eligible for relief under section 1170.95. Therefore, the court was not required to issue an order to show cause and hold an evidentiary hearing.[2]

---

[2]   The parties have engaged in lengthy briefing on the application of the doctrine of law of the case. We find it unnecessary to weigh in on the debate. The record of conviction, which includes this court's holding, establishes Carrasco was found guilty on a valid theory of malice.

## DISPOSITION

The order denying Carrasco's petition for resentencing under section 1170.95 is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

9